Cesar BARROS, Appellant

v.

James Bernard MARTIN, in his official capacity as Chief District Attorney for the County of Lehigh.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2013.
Decided March 5, 2014.
Publication Ordered April 29, 2014.

---

Cesar Barros, pro se.

Edward A. Muir, Deputy District Attorney, Allentown, for appellee.

## OPINION

### PER CURIAM.

Appellant Cesar Barros (Barros) appeals from an order of the Court of Common Pleas of Lehigh County (trial court). The trial court treated Barros' self-titled Petition for Review in the Nature of a Complaint for Declaratory Judgment and Action in Mandamus (Petition) as an appeal from a determination of the office of the District Attorney of Lehigh County (District Attorney), dated November 26, 2012, denying Barros' request for documents under what is commonly referred to as the Right–to–Know–Law (RTKL).[1] The trial court denied Barros' appeal and affirmed the District Attorney's determination. We now affirm with modification.

Barros, an inmate at the State Correctional Institution at Smithfield, is serving time as the result of a homicide conviction. Barros asserts that he and Miguel Quinones (Quinones), both of whom were under the age of 18 at the time, were charged with the homicide. The District Attorney prosecuted Barros and Quinones separately. Barros appears to believe that the District Attorney and Quinones' attorney presented certain evidence—*i.e.*, a confession by Quinones and a record of a polygraph test performed on Quinones—at Quinones' sentencing hearing. It further appears that Barros believes that Quinones' purported confession and polygraph results conflict with the testimony that Quinones presented during Barros' homicide trial, but that, on appeal from Barros' conviction, the District Attorney denied the existence of the Quinones' confession and polygraph results.

Following his conviction, Barros submitted to the District Attorney a RTKL request, dated October 15, 2012, seeking access to police files relating to Barros and Quinones. In support of the request, in addition to citing the RTKL, Barros cited the Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. §§ 9101–9183, and a common law right of access to public judicial records. Barros requested the following documents: (1) Criminal complaint file # 99–85124 *Commonwealth v. Barros* No. 212 of 2000, *Commonwealth v. Quinones* No. 3935 of 2000; (2) a confession and record of polygraph of Quinones; (3) Pennsylvania State Police forensic lab reports, including "ballistic, gunshot residue, clothing, blood DNA results;" (4) "Communication Center Incident Review (911/CAD in sequence);" (5) "Internal Police Wanted Notice for Jose L. Quinones;" (6) "Reports on individual mistakenly apprehended;" and (7) three signed witness statements.

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

(Certified Record (C.R.), Item no. 3 at Exhibit A.)

In his request, Barros also took issue with the alleged failure of the District Attorney to provide him or his attorney with these documents before his criminal trial. Barros asserted that, based upon this alleged failure, the exemptions generally applicable to presumptive release of such records under the RTKL should be deemed waived by the District Attorney. *See* Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Barros also stressed his belief that the public interest aspects of release elevated the need for disclosure of the records.

By letter dated October 19, 2012, Heather F. Gallagher, a Senior Deputy District Attorney and the officer designated by the District Attorney for the purposes of the RTKL to address RTKL requests, responded to Barros' request. Ms. Gallagher denied the request based upon Section 708(b)(16)(ii) of the RTKL, 65 P.S. § 67.708(b)(16)(ii), which exempts from access any "record of an agency relating to or resulting in a criminal investigation, including ... [i]nvestigative materials, notes, correspondence, videos and reports." Ms. Gallagher noted that Barros had previously made requests for the incident report and State Police criminal history records for Criminal Complaint File # 99–85124, which the City of Allentown's Police Department provided to Barros. Ms. Gallagher also noted that the Police Department of the City of Allentown had received and denied Barros' RTKL request for some of the same records he now seeks from the District Attorney's office, that Barros had appealed that denial to the District Attorney's office, which affirmed the denial, and that his appeal of that denial was pending in the Court of Common Pleas of Lehigh County. Ms. Gallagher advised Barros that he had the right to appeal to the District Attorney her decision denying Barros' RTKL request.[2]

Barros filed an appeal of the RTKL request denial. In his appeal, Barros claimed that he was making the request "due to a discovery violation that had occurred" during his trial. Barros argued that the District Attorney should waive the RTKL exemption because of the alleged discovery violation. Barros also argued that Quinones' confession and polygraph had been submitted to the trial court that sentenced Quinones, and that, therefore, those records had become public judicial documents, which entitled him to access.

Following *in camera* review of the records, the District Attorney issued a final determination, dated November 26, 2012, denying the appeal. The District Attorney concluded that the records were exempt from disclosure under the RTKL, because the Office of District Attorney had met its burden to demonstrate that all of the records requested by Barros related to the investigation of a homicide and were exempt as investigative materials under Section 708(b)(16)(ii) of the RTKL.[3] The District Attorney's final determination

---

**2.** With regard to appeals officers, Section 503(a)(2) of the RTKL, 65 P.S. § 67.503(a)(2), provides that the Office of Open Records (OOR) shall designate an appeals officer for all local agencies, except that, pursuant to Section 503(d)(2) of the RTKL, 65 P.S. § 67.503(d)(2):

> The district attorney of a county shall designate ... appeals officers to hear appeals under Chapter 11 relating to access to criminal investigative records in possession

of a local agency of that county. The appeals officer designated by the district attorney shall determine if the record requested is a criminal investigative record.

Thus, here, because the appeal under Chapter 11 relates to access to criminal investigative records, the appeal is heard by an appeals officer designated by the District Attorney and not OOR.

**3.** The District Attorney noted that the Court of Common Pleas of Lehigh County issued

provided notice to Barros that he had thirty days to appeal the decision to the trial court pursuant to Section 1302 of the RTKL, 65 P.S. § 67.1302.

Barros then appealed to the trial court. In his Petition, Barros sought judicial review under the RTKL and advanced other theories under which he claimed to be entitled to the requested documents. The preliminary paragraph of Barros' Petition summarized the Petition as seeking

a judicial appeal pursuant to 65 P.S. § 67.1302, under the [RTKL], and pursuant to 18 Pa.C.S. § 9183(a)(b), under the Criminal History Record Information Act ("CHRIA"), and pursuant to the common-law right to access to public judicial documents; while also seeking a Declaratory Judgment and action in Mandamus.[4]

(C.R., Item No. 1.) Barros attached a notice to defend to the Petition, and the District Attorney filed an answer, averring that Barros' Petition was untimely, because it was filed outside the thirty-day time period set forth in Section 1302 of the RTKL. (C.R., Item No. 3.) Barros responded by providing documents which he contended established that he met the requirements under the "prisoner mailbox rule" for a timely filing. (C.R., Item No. 6.)

By order dated May 3, 2013, the trial court denied the Petition and affirmed the determination of the District Attorney. In so doing, the trial court agreed with the District Attorney that the appeal (which was docketed on January 18, 2013) was time-barred under Section 1302 of the RTKL, in that it was not filed within thirty days of the date of the District Attorney's determination, which occurred on November 26, 2012. The trial court declined to extend the "prisoner mailbox rule" to Barros' Petition, because it determined that Barros failed to provide evidence sufficient to prove the date of mailing. Nevertheless, the trial court addressed the merits of the appeal, concluding that the District Attorney properly denied the appeal. The trial court reasoned that the requested "documents concern 'records[s] of an agency relating to or resulting in a criminal investigation' and, as such, are expressly exempted from disclosure by" Section 708(b)(16) of the RTKL. (Trial Court Order at n. 1, attached to Appellant's brief as Ex. "A.") The trial court also concluded that Barros "cannot use this civil proceeding to collaterally attack any alleged irregularities in a criminal prosecution for which he apparently remains incarcerated[,]" because the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, "is the exclusive mechanism to obtain any relief that is alleged to be owing in that respect." (Id.).

On appeal to this Court,[5] Barros argues that the trial court erred in refusing to

---

an order dated October 12, 2012 (relating to the previous RTKL request Barros had filed with the City of Allentown Police Department, and which Ms. Gallagher had noted in her decision), and that the trial court concluded that the records were exempt from disclosure under CHRIA as " 'intelligence information, investigative information or treatment information.' " (*See* District Attorney's Final Determination at 2, attached to Appellee's brief as Ex. "B.") By per curiam memorandum opinion docketed at *Barros v. City of Allentown and Allentown Police Department,* (Pa.Cmwlth., No. 2129 C.D.2012, filed July

3, 2013), 2013 WL 3357872, this Court affirmed the trial court's order.

4. We note that the posture of this case is unusual. Barros, in the context of a statutory appeal from denial of a RTKL request, also asserts causes of action in the form of a declaratory judgment and mandamus.

5. In cases, such as the instant one, where there is no factual dispute, our review is limited to determining whether the trial court abused its discretion, committed any error of law, or violated any constitutional rights.

apply the "prisoner mailbox rule." Barros also argues that the trial court erred when it concluded that the District Attorney did not err in denying his request for documents under the RTKL. Barros further argues that the trial court applied the wrong legal standard to the extent that his Petition sought declaratory judgment and mandamus relief. Finally, Barros argues that the trial court abused its discretion in denying his petition for writ of habeas corpus *ad-testificandum.*

■ We will first address Barros' argument that the trial court erred when it failed to conclude that Barros' Petition was timely filed under the "prisoner mailbox rule." Presumably, when Barros refers to the "prisoner mailbox rule," he is referring to Pennsylvania Rule of Appellate Procedure 121(a), which provides, in part:

> A *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of the date that the prisoner deposited the *pro se* filing with the prison authorities.

A review of the record reveals that the trial court docketed Barros' Petition on January 18, 2013, although the certificate of service attached to the Petition indicates

that the Petition was served on December 17, 2012. (C.R., Item No. 1.) In response to the District Attorney's answer challenging the timeliness of the Petition, (C.R., Item No. 3), Barros filed a "reply," to which he attached an affidavit stating that on December 17, 2012, he gave the Petition, along with a certificate of service, to prison officials for forwarding to the Clerk of Judicial Records for Lehigh County Courthouse and the District Attorney. (C.R., Item No. 6.) In the affidavit, Barros also states that the District Attorney was served by certified mail, and he attaches a copy of a certified mail domestic return receipt, which indicates that an agent of the District Attorney's office signed for the certified mail on December 21, 2012, and that the cost of mailing to the District Attorney was $6.15. (*Id.*) Barros also attaches to the affidavit two Department of Corrections cash slips—one for "postage, certified fee and return receipt," for mail addressed to the District Attorney and one for "postage legal mail" addressed to the Clerk of Judicial Records. (*Id.*).

Thereafter, subsequent to the filing of the notice of appeal but before the issuance of the trial court's Pa.R.A.P. 1925(a) opinion, Barros supplemented the record to include more complete copies of the cash slips, which indicate that the costs of mailing to the District Attorney and the Clerk of Judicial Records were $6.15 and $2.90, respectively.[6] (C.R., Item No. 19.)

*SWB Yankees LLC v. Wintermantel,* 999 A.2d 672, 674 n. 2 (Pa.Cmwlth.2010), *affirmed,* 615 Pa. 640, 45 A.3d 1029 (2012). "The scope of review for a question under the [RTKL] is plenary." *Id.* (quoting *Stein v. Plymouth Twp.,* 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth. 2010)).

6. Following the filing of his notice of appeal on May 31, 2013, Barros filed with this Court an application for stay and abeyance pending remand to supplement the record. The application is dated June 27, 2013, and docketed with this Court on July 11, 2013. On July 2, 2013 (nine days before this Court received the

application), the trial court docketed a copy of the application addressed to our Court. In the application, Barros requests that we remand the matter to the trial court so that he may supplement the record with additional documentation establishing that he mailed the Petition on December 17, 2012. By order dated July 29, 2013, we denied the application because the trial court had not yet remitted the certified record. This Court received the record the next day. The trial court appears to have supplemented the certified record by including the application and its attachments in the record transmitted to this Court. (*See* C.R., Item No. 19.).

Barros also supplemented the record to include a document entitled "Offender Transaction History," which shows deductions from his inmate account on December 18, 2012, in the amounts of $6.15 and $2.90 for first-class mail. (*Id.*) The undisputed evidence summarized above[7] is sufficient to establish Barros' timely mailing of his Petition under the "prisoner mailbox rule" on or about December 17 or 18, 2012, well before the expiration of the filing period on December 26, 2012. Thus, the trial court erred in dismissing the appeal as untimely. A remand, however, is unnecessary, because the trial court also addressed the merits of the appeal in its Rule 1925(a) opinion.

■ We now consider whether the trial court erred in concluding that the District Attorney did not err in denying Barros' request under the RTKL. Although Barros acknowledges that Section 708(b)(16)(ii) of the RTKL exempts from access agency records relating to a criminal investigation, he argues that Section 506(c)(3) of the RTKL, 65 P.S. § 67.506(c)(3), allows an agency, at its discretion, to make a record available if "public interest favoring access outweighs any individual, agency or public

interest that may favor restriction of access." He asserts that, pursuant to Section 506(c)(3), the District Attorney had a duty to review the matter and determine whether the information could be released in the interest of justice. Barros contends that had such an analysis been conducted, the District Attorney would have been compelled to disclose the requested information. He also asserts that Quinones' confession and record of polygraph are "public judicial documents," and, therefore, he should be granted access to them under a common law doctrine. *See Cmwlth. v. Martinez*, 917 A.2d 856 (Pa.Super.2007). He also contends that, as an accused, he was entitled to the requested information, and the District Attorney's office had a duty to disclose the information. Specifically, he relies upon Pa. R.Crim. P. 573(B)(1)(e)[8] for the proposition that the District Attorney should have provided Barros with the requested information at the discovery stage of his criminal proceeding.[9]

■ Section 102 of the RTKL, 65 P.S. § 67.102, defines a "public record," in relevant part, as a "record ... of a ... local agency that:

7. The District Attorney does not address at all Barros' reliance on the "prisoner mailbox rule" in his brief on appeal.

8. Pa. R.Crim. P. 573(B)(1)(e), relating to Disclosure by the Commonwealth, provides:

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
. . . .
(e) any results or reports of scientific tests, expert opinions, hand written or recorded reports of polygraph examination or

other physical or mental examinations *of the defendant* that are within the possession or control of the attorney for the Commonwealth;

(Emphasis added.) We make no attempt to ascertain whether the District Attorney violated Pa. R.Crim. P. 573(B)(1)(e) during the course of Barros' criminal proceeding, but we do note that the rule appears to require the disclosure of recorded reports of polygraph examination of Barros—not Quinones.

9. Barros also asserts that the inaccessibility of the requested records under the RTKL constitutes a violation of his equal protection rights and involves a constitutionally protected reputation interest, although he fails to develop these arguments. Issues not briefed are waived on appeal. *Van Duser v. Unemployment Comp. Bd. of Review*, 164 Pa.Cmwlth. 96, 642 A.2d 544, 548 n. 3 (1994).

(1) is not exempt under section 708 [of the RTKL]; [and]

(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; . . ."

Section 708(b)(16)(ii) of the RTKL sets forth a variety of exemptions from the definition of "public record" and provides:

(b) Exceptions.—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

. . .

(16) A record of an agency relating to or resulting in a criminal investigation, including:

. . .

(ii) Investigative materials, notes, correspondence, videos and reports.

Thus, if a record, on its face, relates to a criminal investigation, it is exempt under the RTKL pursuant to Section 708(b)(16)(ii). *See Coley v. Philadelphia Dist. Attorney's Office*, 77 A.3d 694, 697 (Pa.Cmwlth.2013); *Mitchell v. Office of Open Records*, 997 A.2d 1262, 1264 (Pa. Cmwlth.2010). Criminal investigative records remain exempt from disclosure under the RTKL even after the investigation is completed. *Sullivan v. City of Pittsburgh, Dep't of Pub. Safety*, 127 Pa.Cmwlth. 339, 561 A.2d 863, 865 (1989).

Also, a record is not considered a public record under Section 102 of the RTKL if it is "exempt under any other State or Federal Law," including the CHRIA. *See Coley*, 77 A.3d at 697. Section 9106(c)(4) of the CHRIA, 18 Pa.C.S. § 9106(c)(4), provides that "[i]nvestigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency." The CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." Section 9102 of the CHRIA, 18 Pa.C.S. § 9102.

Thus, the records requested by Barros—*i.e.*, the criminal complaint file, forensic lab reports, any confession and record of polygraph of Quinones, the "Communication Center Incident Review," the "Internal Police Wanted Notice," "Reports on individual mistakenly apprehended," and three signed witness statements—are protected from disclosure under both the RTKL and the CHRIA as records "relating to . . . a criminal investigation" and "investigative information," respectively.

As to Barros' argument that the District Attorney erred in not disclosing the requested information under Section 506(c) of the RTKL, relating to requests, that section does not compel disclosure under the circumstances of this case. Section 506(c) of the RTKL provides:

(c) Agency discretion.—An agency *may* exercise its discretion to make any otherwise exempt record accessible for inspection and copying under this chapter, if *all* of the following apply:

(1) Disclosure of the record is not prohibited under any of the following:

(i) *Federal or State law or regulation.*

(ii) Judicial order or decree.

(2) The record is not protected by a privilege.

(3) The agency head determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access.

(Emphasis added.) "Although Section 506(c) grants an agency the *discretion* to release an otherwise exempt record under certain circumstances, it does not *require*

an agency to do so." *Dep't of Health v. Office of Open Records*, 4 A.3d 803, 815 (Pa.Cmwlth.2010); *see also Dep't of Conservation and Natural Res. v. Office of Open Records*, 1 A.3d 929, 939 n. 16 (Pa. Cmwlth.2010) (explaining that agencies have discretion, pursuant to Section 506(c), to release otherwise exempt records through process of redaction when certain conditions are satisfied). Section 506(c), however, "prohibits such discretionary disclosure," when disclosure of the requested material "is prohibited by state or federal law," as in the case now before the Court. *See Dep't of Natural Res.*, 1 A.3d at 939 n. 16. As discussed above, the documents requested by Barros are protected from disclosure under not only the RTKL, but also under the CHRIA. Thus, the District Attorney could not have relied upon Section 506(c) as a basis to disclose the otherwise exempt records.

 Barros also argues that Quinones' confession and record of polygraph are "public judicial documents" to which he should be granted access under a common law right to judicial documents.[10] There is no evidence, however, that a confession or a record of polygraph results, to the extent they may exist, were actually entered into the judicial record. We note that in our per curiam memorandum opinion docketed at *Barros v. City of Allentown and Allentown Police Department*, (Pa.Cmwlth., No. 2129 C.D.2012, filed July 3, 2013), 2013 WL 3357872, we considered Barros' request for these same documents from the City of Allentown Police Department. In that appeal, Barros advanced the same argument—*i.e.*, that he believed that Quinones failed the polygraph test and that someone prosecuting the homicide for which both Quinones and Barros were charged misinformed the criminal court in order to excuse and/or minimize Quinones' culpability in the homicide. The trial court conducted an *in camera* review of the file provided by the City of Allentown Police Department, including a letter from Chief Hannah of the Police Department. In the letter, Chief Hannah stated that he had an opportunity to discuss the matter with the lead investigator, who recalled that Quinones was brought from Rikers Island prison in New York to Lehigh County during the course of Barros' homicide trial. According to Chief Hannah, the investigator further recalled a proffer offered and a subsequent polygraph conducted upon Quinones, following which Quinones testified

---

10. "Prior to the RTKL, which became effective in 2009, the common law provided the public with a right of access to inspect and copy judicial records and documents. As a threshold inquiry, the courts determined whether the requested documents constituted public judicial documents." *Guarrasi v. Scott*, 25 A.3d 394, 401 (Pa.Cmwlth.2011). Public judicial documents are "[d]ocuments that are *filed with the court* and, in particular, those that are *used by the judge in rendering a decision* are clearly considered public judicial documents." *Id.* (quoting *Cmwlth. v. Long*, 592 Pa. 42, 52, 922 A.2d 892, 898 (2007)) (emphasis added in *Guarrasi*). "[T]he right to inspect judicial documents is not absolute, and courts do have supervisory power over their records and files." *Cmwlth. v. Martinez*, 917 A.2d 856, 862 (Pa.Super.2007). Moreover, "[w]here the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied." *Id.* (quoting *Cmwlth. v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987)). It is within the discretion of the trial court to determine whether access to a judicial document is appropriate. *Id.* This Court has not addressed whether the common law right of access to public judicial documents continues to exist subsequent to the enactment of the RTKL, and in *Guarrasi* we declined to address the asserted violations of common law access to records where a plaintiff failed to timely appeal RTKL decisions denying access to the requested records, noting that the RTKL provides the exclusive means to seek redress for violations under the RTKL. *Guarrasi*, 25 A.3d at 405.

at Barros' trial. The investigator believed that all of these events transpired on the same day under the direction of the District Attorney's office, but that he did not believe that any statement (*i.e.*, confession) by Quinones was ever memorialized. Chief Hannah opined that, if the "account is accurate it would lend a plausible explanation as to the absence of a documented statement and polygraph results." *Barros v. City of Allentown and Allentown Police Department,* (Pa.Cmwlth., No. 2129 C.D. 2012, filed July 3, 2013), slip op. at 10, 2013 WL 3357872. In disposing of the issue of whether the trial court properly reviewed the requested confession and polygraph results, we concluded that "[t]he trial court could not review what was not there," noting that "nothing in the record indicated that the requested documents were part of the file." *Id.* at 11. Barros offers nothing new in this matter to substantiate his contention that any confession or report of polygraph results that may exist *in fact* within a judicial record, and the District Attorney denies the existence of the requested records. We thus decline to consider whether they would be subject to disclosure under a common law doctrine relating to judicial documents.

To the extent that Barros seeks to characterize this action as a declaratory judgment action to obtain records that he believes should have been turned over to him pursuant to Pa. R.Crim. P. 573(B)(1)(e) during the course of his criminal proceedings, we agree with the trial court that the "Post Conviction Relief Act ... is the exclusive vehicle through which any relief in relation to a criminal conviction may be sought," and Barros "cannot use this civil proceeding to collaterally attack any alleged irregularities in a criminal prosecution for which he apparently remains incarcerated." (Trial court 1925(a) opinion at 2, n. 1 (citing *Guarrasi,* 25 A.3d at 402); and *Keller v. Kinsley,* 415 Pa.Super. 366, 609 A.2d 567, 568 (1992).)

Next, we will address Barros' argument that the trial court applied the wrong legal standard to the extent that his Petition sought declaratory judgment and mandamus relief. Simply put, the trial court treated this matter as an appeal from a denial of a RTKL request. To the extent that Barros' action may be characterized as a dual jurisdiction matter— seeking statutory appellate review and initiating an original jurisdiction action at the trial court, we conclude that the trial court did not err in dismissing the matter. "[M]andamus 'is an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy.'" *Princeton Sportswear Corp. v. Redevelopment Auth.,* 460 Pa. 274, 279, 333 A.2d 473, 476 (1975). With regard to declaratory relief, the purpose of the Declaratory Judgments Act "is to settle and afford relief to any person from uncertainty and insecurity with respect to rights, status and legal relations affected by a statute." *Chester Upland Sch. Dist. v. Cmwlth.,* 90 Pa.Cmwlth. 464, 495 A.2d 981, 983 (1985). Here, Barros does not have a clear right to the requested documents, and, as discussed above, the Post Conviction Relief Act is the vehicle through which he may challenge the alleged withholding of documents that may have impacted his criminal trial. Thus, mandamus and declaratory judgment relief are improper.

Finally, we will address Barros' argument that the trial court abused its discretion in denying his petition for writ of habeas corpus *ad-testificandum.* Barros filed the petition for writ in an attempt to obtain an order allowing him to be present at a status conference scheduled by the trial court, and he also filed a memorandum in support of his position. Thereafter, the trial court entered an order, deny-

ing the petition for writ and cancelling the status conference. Barros contends that had he been permitted to appear at the status conference he could have attested to the fact that the Clerk of Judicial Records received his Petition on December 20, 2012, and that the Assistant Chief Deputy forwarded him a coversheet to fill-out and return. In the interest of justice, he requests a remand for an evidentiary hearing. Because we previously concluded that the trial court erred in dismissing the appeal as untimely, there is no need to remand for an evidentiary hearing to determine the timeliness of the appeal. Thus, we need not address this issue further.

Accordingly, we affirm the order of the trial court with modification, acknowledging the timeliness of Barros' appeal yet, nevertheless, denying his appeal on the merits.

### ORDER

AND NOW, this 5th day of March, 2014, the order of the Court of Common Pleas of Lehigh County is AFFIRMED with modification, as discussed in the attached Opinion.